**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

KIMBERLY GOODNOW, AUDRA TERRAZAS, AND TIMOTHY STEFFENS, All Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

vs.

PREMIERE GLOBAL SERVICES, INC., AMERICAN TELECONFERENCING SERVICES, LTD., AUDIO TELCOMMUNICATIONS TECHNOLOGY II LLC, and DOE CORPS 1-10,

Defendants.
_________________________________/

**CIVIL ACTION NO: 22-CV-02184-TWT**

**UNOPPOSED PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs and Class Representatives Kimberly Goodnow, Audra Terrazas and Timothy Steffens ("Plaintiffs" or "Class Representatives") hereby move for this Court's preliminary approval of the Parties' class action settlement;[1] approving the form and manner of class notice; authorizing the settlement administrator to disseminate a notice of settlement to the settlement class members; set a deadline to

[1] The Class Action Settlement Agreement is attached as Exhibit 1.

opt-in or object and scheduling a final approval hearing no earlier than ninety (90) days after this Court's Preliminary Approval Order.

## I. BACKGROUND AND OVERVIEW OF SETTLEMENT.

Plaintiffs and the Class are former employees of PREMIERE GLOBAL SERVICES, INC. and AMERICAN TELECONFERENCING SERVICES, LTD. (collectively, "Defendants" or "PGi") who were participants of the Premiere Global Services U.S. Affiliates Severance Pay Plan Amended and Restated Effective January 1, 2018 (the "Plan"), and who were terminated for a "Severance-Qualifying Event" on or around March 31, 2021, June 25, 2021 and August 20, 2021. Am. Compl. ¶ 1. As part of their separation, Plaintiffs and the Putative Class entered into Severance Agreements with PGi wherein they would receive severance under the Plan, referred to as "Basic Severance Pay," plus some received an additional amount of severance, referred to as "Enhanced Severance Pay". Id. at ¶ 2. Under the terms of the Severance Agreement, the Basic Severance Pay would be paid first in installments according to PGi's regular pay periods followed by the payment of Enhanced Severance. Id. at ¶ 3.

However, on or about September 1, 2021, PGi, notified the Class that it would not be processing that pay period's severance payments (Basic or Enhanced Severance Pay) and ceased making the remaining Basic or Enhanced Severance payments. Id. at ¶ 4. Plaintiffs brought this action on behalf of themselves and the Putative Class to

recover their unpaid Basic Severance Pay pursuant to the Employee Retirement Income Security Act ("ERISA)" and their Enhanced Severance Pay pursuant to Georgia common law. Id. at ¶ 6.

On December 15, 2022, the Court granted Plaintiff's motion for class certification. D.E. 17. The Court certified the following Class for ERISA claims for the Basic Severance and common law breach of contract for the Enhanced Severance:

> All former employees of PGi who: (1) entered into a Severance Agreement in connection with layoffs conducted on or around March 31, 2021, June 25, 2021, or August 20, 2021; and (2) were not paid the full amount of their Basic Severance or Enhanced Severance promised in the Severance Agreement;

Id. at pp. 7-8. The Court further appointed the undersigned counsel as Class Counsel and authorized notice to the Class. Id. at p. 8.

The Parties held an initial mediation on March 7, 2023 with Lee Parks, Esq. of Henning Mediation & Arbitration Service, Inc. to discuss the claims and damages in this action and related actions. The Parties held a second mediation on August 2, 2023 and Mr. Parks made a mediator's global settlement proposal that the Parties (including the Plaintiffs in this action and others) subsequently accepted. Relevant to the claims here, the global settlement was allocated based on the percentage and type of severance owed to the respective Class member, as follows:

- Class members with 75% or more of Basic Severance Outstanding would receive 59% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.
- Class members with between 30% –75% of Basic Severance Outstanding would receive 25% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.
- Class members with between 15%–30% of Basic Severance Outstanding would receive 10% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.
- Class members with between 0%–15% of Basic Severance Outstanding would receive 5% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.
- Any Class members entitled to receive Enhanced Severance would receive 5% of their Enhanced Severance Outstanding minus one-third of the amount allocated to attorneys' fees.

The foregoing allocation was designed to make it fair and equitable to all Class members since some Class members had already received a portion of their Basic and/or Enhanced Severance while other Class Members received no payment. In addition, the Class members in this action were treated as the same as other plaintiffs

in the individual actions who were denied severance before they signed a severance agreement (and therefore did not fall within the definition of the Class).

The proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

## II. THE PROPOSED SETTLEMENT.

The Settlement Agreement, if approved, will resolve all claims of the Plaintiffs and all members of the Class in exchange for Defendant's agreement to pay $125,113.08. The parties negotiated the case on a common fund basis, meaning that the settlement amounts that the parties were exchanging were inclusive of all attorneys' fees, costs and administrative expenses.

With the Class comprised of approximately 43 members, each Class member who opts-in to the settlement will receive a net settlement payment after attorney's fees ranging from $28.84 (for a class member who received all of the Basic Severance and most of the Enhanced Severance) to $9,727.48 (for a class member who received no Basic or Enhanced Severance). This is a "claims made" settlement. Settlement Class members will be required to submit claim forms to receive their allocated share of the settlement proceeds. The agreed-upon claims process makes it easy for class members to submit claims – claims can be submitted by mail or email.

The Settlement Agreement also provides that Plaintiffs' Counsel's fees are to come out of the fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees, inclusive of reasonable and customary litigation costs.

**C. Administration of Notice.**

The Parties have agreed to utilize a private, third-party vendor, CPT Group, Inc. ("Settlement Administrator") to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid by Defendants.

Within twenty (20) business days of the Court's preliminary approval of the Settlement Agreement, the Settlement Administrator shall mail the Notice Form, attached to the Settlement Agreement, by U.S. mail and email to all Class members. The Notice Form shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Class members' eligibility to recover their portion of the settlement proceeds, and will include an explanation of the "claims made" process, as well as an explanation as to what happens if the settlement checks are not timely cashed. The Notice will also direct recipients to the Settlement Administrator or Class Counsel for additional information.

The Settlement Agreement provides that Settlement Class members who choose to opt-in or object to the settlement may do so within sixty (60) days of the Notice mailing date. If the Court grants preliminary approval of the settlement, Defendant will transfer the full amount of the Gross Settlement Amount to the Settlement Administrator within ten (10) business days of the Court's Order. Settlement checks will be mailed to all Settlement Class members upon final approval of the settlement. To the extent any money remains in the fund after these distributions and after Settlement Class members have had sixty (60) days to cash their settlement checks, such monies shall revert to Defendant.

**D. Attorneys' Fees and Expenses.**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees. Class Counsel will file a separate motion seeking approval for fees and costs at least fourteen (14) days prior to the class member's objection deadline. Defendant does not oppose the amount of fees and costs sought by Class Counsel for up to one third of the total Gross Settlement Amount equal to $41,712.70.

## III. PRELIMINARY SETTLEMENT APPROVAL

As part of preliminary approval of the settlement, Plaintiff's respectfully seek certification of the Settlement for the purposes of settlement, as described here.

### A. **The Settlement Meets the Requirements of Rule 23(e) for Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement agreement. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc*., 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009). "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id*. The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and

preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter an order preliminarily approving the Class Action Settlement Agreement.

**1. The Class representative and Class Counsel Have Adequately Represented the Class.**

There is no question that Plaintiffs and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Plaintiffs are adequate given that their interests are equivalent to those of the Class. There is also no obvious conflict of interest between the Plaintiffs and the Class because they are owed varying amounts of Basic and/or Enhanced Severance.

With respect to Class Counsel, the Court has already determined that Class Counsel has "the experience, knowledge, and financial resources to adequately and fairly represent the interests of both the named Plaintiffs and the class members." D.E. 17 a p. 8.

When, as here, the Parties are represented by competent counsel, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight,

and supports the fairness of the class settlement."). Thus, the proposed settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator who was selected by the parties. This also weighs in favor of approval. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length—and extended—negotiations between the Parties and their counsel. The Parties participated in two mediations with Mr. Parks and substantial follow up communications. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation.

**3. The Settlement Provides Significant Relief to Class Members.**

As detailed above, the Settlement will provide significant relief to Class members relative to the amount and type of severance owed, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendants to pay $125,113.08 into a Settlement Account to resolve the claims at issue. The amount to be paid to each Class member is a factor of the percentage and type of severance owed, meaning the Class members who already received most or nearly all of the severance owed will receive less than the Class members who received little or none of their severance.

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls

within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (citations and quotations omitted).

In this case, there is a substantial risk that Plaintiffs could recover nothing, even if the Plaintiffs were to prevail. Plaintiffs understands that the webcasting and teleconferencing portions of PGi's business where Plaintiffs worked are no longer operating businesses since PGi has sold its assets to other companies. In addition to the instant litigation, PGi currently has other pending lawsuits (some of which have been filed with this Court) that allege PGi reportedly owing large sums of money to various creditors. Moreover, whether Plaintiffs or Class members could recover anything from the third-party entities that bought PGi's assets is uncertain and would entail a separate litigation against those entities under a successor liability theory. Thus, the chances of recovering funds in this case are highly uncertain, and would require substantial further litigation.

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise

that affords a lower award with certainty.”); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The Plaintiffs support the Settlement and Class Counsel believes that the other Class members will have a favorable reaction to the Settlement based on its communications with Class members.

#### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats class members equitably. As set forth above, the Class was separated into groups based on the percentage of severance owed and the type of severance. The Class is comprised of only 43 members, and each Class member will have the opportunity to participate in the Settlement. If a Class member does not participate in the Settlement, his or her rights are unaffected by the Settlement.

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome is not guaranteed. As discussed above, Plaintiffs faced significant risks with recovering on any judgment. To avoid this risk, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary relief for members of the Class. See *Bennett v. Behring Corp.*, 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been “unwise [for plaintiffs] to risk the

substantial benefits which the settlement confers"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

**5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in additional proceedings before this Court and likely a separate action against the third-party entities who bought PGi's assets. The costs and time associated with these litigation activities would have been significant, and would delay any resolution for the Class. By entering into a settlement now, Plaintiffs have saved precious time and costs, and avoided the risks associated with further litigation.

For the forgoing reasons, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

**IV. <u>The Proposed Notice of Settlement Is Reasonable.</u>**

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who may be part of a proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

Under the Settlement, each member of the Class will be sent a Notice of the Proposed Class Action Settlement and Claims Form (attached as Exhibit B and C) via mail and email informing them of the terms of the settlement, an explanation of settlement approval process, and provide contact information to get further information, and includes a Claim Form to participate in the Settlement. The Claims form also contains a limited release that the Class Member is required to sign to participate in the settlement, which release substantially overlaps with the ones that Class members signed in the Severance Agreement (except it covers the claims in this action). See e.g., D.E. 13-2 at Ex. A. Accordingly, this Court should approve the Notice and Claims Form as the contents of the notice and the methods of dissemination are reasonable.

## V. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully requests an Order granting Preliminary approval of the Settlement and Authorizing Notice to the Class.

Respectfully submitted this 11th day of December 2023.

/s/Bryan Arbeit
JEREMY STEPHENS, ESQ.
GA Bar No.: 702063
**Morgan & Morgan, P.A.**
191 Peachtree Street, N.E., Ste. 4200
Atlanta, Georgia 30343-1007
Tel: (404) 965-1682
E-mail: jstephens@forthepeople.com

BRYAN ARBEIT, ESQ.
*Pro Hac Vice*
**Morgan & Morgan, P.A.**
8151 Peters Rd, Fl. 4
Plantation, FL 33324
Tel: (954) 694-9610
E-mail: barbeit@forthepeople.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ADAM BAKER, ELSA EMBAYE, BRIAND FELDMAN, RITA GRIT, CAROL MORGAN, JOSIAH NOBLE, PAULA REESE, JESSICA TORREZ, and MISTY WILLIAMS, individually and on behalf of a class of others similarly situated,

Plaintiffs,

v.

PREMIERE GLOBAL SERVICES, INC., AMERICAN TELECONFERENCING SERVICES, LTD., MICHELE J. NELSON, and ALICE HAYES,

Defendants.

____________________________________/

Case No. 22-cv-00030-TWT

Hon. Thomas W. Thrash, Jr.

**CERTIFICATE OF SERVICE**

I, Jeremy Stephens., attorney for Plaintiffs, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand will send notification of such filing to all known counsel of record.

SO CERTIFIED, this the 11th day of December 2023.

*s/ Bryan Arbeit*
Bryan Arbeit, Esq.