**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KIMBERLY GOODNOW, AUDRA TERRAZAS, AND TIMOTHY STEFFENS, All Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br>vs.<br><br>PREMIERE GLOBAL SERVICES, INC., AMERICAN TELECONFERENCING SERVICES, LTD., AUDIO TELCOMMUNICATIONS TECHNOLOGY II LLC, and DOE CORPS 1-10,<br><br>          Defendants.<br>_____/ | CIVIL ACTION NO: 22-CV-02184-TWT |

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM OF LAW**

Plaintiffs and Class Representatives Kimberly Goodnow, Audra Terrazas and Timothy Steffens ("Plaintiffs" or "Class Representatives") hereby respectfully file this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.

On January 25, 2024, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"). ECF No. 35.

Following entry of that Order, the Class Administrator sent a Notice of Proposed Class Action Settlement with Claim Form via first class mail and email to the 43 Class Members. Declaration of William Argueta ("Argueta Decl.") at ¶¶ 5-9, filed at ECF No. 36-1. 32 Class Members submitted Claim Forms. *Id.* at ¶ 12. No objections were filed and there were no disputed claims. *Id.* at ¶¶ 13-14. Notably, the 32 Class Members that submitted a Claim Form are receiving **96.55**% of the Net Settlement Amount (Total Settlement Minus Attorneys' Fees & Costs). *Id.* at ¶ 16. The payments to these 32 Class Members averaged $2,516.41. *Id.* at ¶ 17. In contrast, the 11 Class Members who did not submit Claim Forms had an average amount of $261.38. *Id.* at ¶ 18.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. Defendant does not oppose this Motion. In further support thereof, Plaintiff states as follows:

I. **BACKGROUND AND OVERVIEW OF SETTLEMENT.**

Plaintiffs and the Class are former employees of PREMIERE GLOBAL SERVICES, INC. and AMERICAN TELECONFERENCING SERVICES, LTD. (collectively, "Defendants" or "PGi") who were participants of the Premiere Global

Services U.S. Affiliates Severance Pay Plan Amended and Restated Effective January 1, 2018 (the "Plan"), and who were terminated for a "Severance-Qualifying Event" on or around March 31, 2021, June 25, 2021, and August 20, 2021.  Am. Compl. ¶ 1.  As part of their separation, Plaintiffs and the Putative Class entered into Severance Agreements with PGi wherein they would receive severance under the Plan, referred to as "Basic Severance Pay," plus some received an additional amount of severance, referred to as "Enhanced Severance Pay".  Id. at ¶ 2.  Under the terms of the Severance Agreement, the Basic Severance Pay would be paid first in installments according to PGi's regular pay periods followed by the payment of Enhanced Severance.  Id. at ¶ 3.

On or about September 1, 2021, PGi, notified the Class that it would not be processing that pay period's severance payments (Basic or Enhanced Severance Pay) and ceased making the remaining Basic or Enhanced Severance payments.  Id. at ¶ 4. Specifically, the Chief Human Resources Officer of PGi sent an email that explained that PGi was required to hold, or stop payment on, all severance payments in the U.S. as part of a new forbearance agreement with lenders.  Id. at ¶ 5; Plaintiffs brought this action on behalf of themselves and the Putative Class to recover their unpaid Basic

Severance Pay pursuant to the Employee Retirement Income Security Act ("ERISA") and their Enhanced Severance Pay pursuant to Georgia common law. Id. at ¶ 6.

On December 15, 2022, the Court granted Plaintiff's motion for class certification. D.E. 17. The Court certified the following Class for ERISA claims for the Basic Severance and common law breach of contract for the Enhanced Severance:

> All former employees of PGi who: (1) entered into a Severance Agreement in connection with layoffs conducted on or around March 31, 2021, June 25, 2021, or August 20, 2021; and (2) were not paid the full amount of their Basic Severance or Enhanced Severance promised in the Severance Agreement;

Id. at pp. 7-8. The Court further appointed the undersigned counsel as Class Counsel and authorized notice to the Class. Id. at p. 8.

The Parties held an initial mediation on March 7, 2023, with Lee Parks, Esq. of Henning Mediation & Arbitration Service, Inc. to discuss the claims and damages in this action and related actions. The Parties held a second mediation on August 2, 2023, and Mr. Parks made a mediator's global settlement proposal that the Parties (including the Plaintiffs in this action and others) subsequently accepted. Relevant to the claims here, the global settlement was allocated based on the percentage and type of severance owed to the respective Class member, as follows:

- Class members with 75% or more of Basic Severance Outstanding would receive 59% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.

- Class members with between 30% –75% of Basic Severance Outstanding would receive 25% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.

- Class members with between 15%–30% of Basic Severance Outstanding would receive 10% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.

- Class members with between 0%–15% of Basic Severance Outstanding would receive 5% of their Basic Severance Outstanding, minus one-third of the amount allocated to attorneys' fees.

- Any Class members entitled to receive Enhanced Severance would receive 5% of their Enhanced Severance Outstanding minus one-third of the amount allocated to attorneys' fees.

The foregoing allocation was designed to make it fair and equitable to all Class members since some Class members had already received a portion of their Basic and/or Enhanced Severance while other Class Members received none of their severance. In addition, the Class members in this action were treated as the same as

5

other plaintiffs in the individual actions who were denied severance before they signed a severance agreement (and therefore did not fall within the definition of the Class).

The settlement is fair and reasonable and should be granted final approval by the Court.

## II.   THE SETTLEMENT AGREEMENT.

The Settlement Agreement provided for a common fund or Gross Settlement Amount of up $125,113.08, inclusive of fees and costs. The Net Settlement Amount after fees and costs (up to one-third of the gross settlement amount) was $83,400.38. The costs for the mediation and settlement administrator were paid separately by Defendants. As noted above, 32 of the 43 Class Members submitted Claim Form for a collective sum of $80,525.23. This is 96.55% of the total Net Settlement Amount which means that 96.55% of the funds made available to the Class Members were claimed.

### A.   Administration of Notice

The Parties utilized a private, third-party vendor, CPT Group, Inc. ("Settlement Administrator") to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid by Defendants, which is $10,000. Argueta Decl." at ¶ 19. The Settlement

Administrator mailed the Notice Form, attached to the Settlement Agreement, by U.S. mail and email to all Class members. *Id.* at ¶¶ 8-10. The Notice Form apprised the Settlement Class of the existence of the Settlement Agreement and of the Class members' eligibility to recover their portion of the settlement proceeds and included an explanation of the "claims made" process. *Id.* at Ex. A. The recipients were also directed to the Settlement Administrator or Class Counsel for additional information. *Id.*

### B. Attorneys' Fees and Expenses.

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees. A motion for attorneys' fees and expenses is being filed concurrently with this Motion.

### III. THE SETTLEMENT MEETS THE REQUIREMENT OF RULE 23(e) FOR FINAL APPROVAL

As part of preliminary approval of the settlement, Plaintiff's respectfully seek certification of the Settlement for the purposes of settlement, as described here.

### A. The Settlement Meets the Requirements of Rule 23(e) for Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at

7

\*5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc*., 2009 U.S. Dist. LEXIS 113491, at \*7 (M.D. Fla. Nov. 19, 2009). "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at \*5-6.

The second step—the procedural stage this matter is now in—following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id*.

To be sure, the decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at \*2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter an order granting final approval of the Class Action Settlement Agreement.

### 1. The Class representative and Class Counsel Have Adequately Represented the Class.

There is no question that Plaintiffs and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Plaintiffs are adequate given that their interests are equivalent to those of the Class. There is also no obvious conflict of interest between the Plaintiffs and the Class because they are owed varying amounts of Basic and/or Enhanced Severance.

With respect to Class Counsel, the Court has already determined that Class Counsel has "possess the experience , knowledge, and financial resources to adequately and fairly represent the interests of both the named Plaintiffs and the class members." D.E. 17 a p. 8.

When, as here, the Parties are represented by competent counsel, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the settlement satisfies Rule 23(e)(2)'s first component, adequacy.

        **2.  The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator who was selected by the parties. This also weighs in favor of approval. *See Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The proposed Settlement, and the record in this case, shows that the Settlement Agreement was the product of extensive and detailed arm's-length—and extended—negotiations between the Parties and their counsel. The Parties participated in two mediations with Mr. Parks and substantial follow up communications. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation.

### 3. The Settlement Provides Significant Relief to Class Members.

As detailed above, the Settlement will provide significant relief to Class members relative to the amount and type of severance owed, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendants to pay up to $125,113.08. Assuming the Court grants Plaintiff's motion for attorneys and costs, Defendants

will be paying a total sum of $122,237.93, which is 97.7% of the Gross Settlement Amount. The amount to be paid to each Class Member is a factor of the percentage and type of severance owed, meaning the Class Members who already received most or nearly all of the severance owed will receive less than the Class Members who received little or none of their severance. The average payment to the Class Members who submitted a Claim form is $2,516.41 while those Class Members who did not submit a Claim Form only had an average payment of $261.38.

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)).

In this case, there was a real risk that Plaintiffs could recover nothing even if the Plaintiffs were to prevail. PGi is no longer an operating business since it has sold its assets to third parties. PGi also faces substantial pending litigation in this

Court that dwarfs the amounts owed to the Plaintiffs.[1]  Whether Plaintiffs or Class members could recover anything from the third-party entities that bought PGi's assets is uncertain and would entail a separate litigation against those entities under a successor liability theory.  Thus, while the underlying claims are likely meritorious, the chances of recovering funds are highly uncertain, and would require substantial further litigation.

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

No Class Member objected to the Settlement.  The amounts paid to the participating Class Members is significant and result in them being paid a meaningful amount of the total severance promised when factoring in the amounts

---

[1] Pending litigation against PGi includes the following: (1) a failure to pay rent on its headquarters where a judgment of nearly $1.5 million has already been entered; (2) a failure to pay revenue share where PGi owes a net amount of over $5 million; (3) an action for unpaid commissions in the amount of $241,900; and (4) a failure to return misdirected payments totaling $209,873.

13

previously paid to the Class Members and the amounts they are receiving as part of the Settlement.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats class members equitably. As set forth above, the Class was separated into groups based on the percentage of severance owed and the type of severance. The Class is comprised of only 43 members, and each Class member had the opportunity to participate in the Settlement. If a Class member does not participate in the Settlement, his or her rights are unaffected by the Settlement.

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome is not guaranteed. As discussed above, Plaintiff faced significant risks with recovering on any judgment. To avoid this risk, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary relief for members of the Class. See *Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

14

Aside from the risks of litigation, continuing the litigation would have resulted in additional proceedings before this Court and likely a separate action against the third-party entities who bought PGi's assets. The costs and time associated with these litigation activities would have been significant and would delay any resolution for the Class. By entering into a settlement now, Plaintiffs have saved precious time and costs, and avoided the risks associated with further litigation.

The other components of Rule 23 regarding notice to the Class Members, filing of the Settlement Agreement, and ability to object to the Settlement have all been satisfied.

## **CONCLUSION.**

For the foregoing reasons, Plaintiffs respectfully requests an Order granting final approval of the Settlement.

Respectfully submitted this 8th day of May 2024.

/s/Jeremy Stephens
JEREMY STEPHENS, ESQ.
GA Bar No.: 702063
**Morgan & Morgan, P.A.**
191 Peachtree Street, N.E., Ste. 4200
Atlanta, Georgia 30343-1007
Tel: (404) 965-1682
E-mail: jstephens@forthepeople.com

BRYAN ARBEIT, ESQ.
*Pro Hac Vice*
**Morgan & Morgan, P.A.**
8151 Peters Rd, Fl. 4
Plantation, FL 33324
Tel: (954) 694-9610
E-mail: barbeit@forthepeople.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ADAM BAKER, ELSA EMBAYE, BRIAND FELDMAN, RITA GRIT, CAROL MORGAN, JOSIAH NOBLE, PAULA REESE, JESSICA TORREZ, and MISTY WILLIAMS, individually and on behalf of a class of others similarly situated, | Case No. 22-cv-00030-TWT  Hon. Thomas W. Thrash, Jr. |
| Plaintiffs, | |
| v. | |
| PREMIERE GLOBAL SERVICES, INC., AMERICANTELECONFERENCING SERVICES, LTD., MICHELE J. NELSON, and ALICE HAYES, | |
| Defendants. | |

_____/

## CERTIFICATE OF SERVICE

I, Jeremy Stephens, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand will send notification of such filing to all known counsel of record.

SO CERTIFIED, this the 8th day of May 2024.

*s/ Jeremy Stephens*
Jeremy Stephens, Esq.

17